---

LYLE v. PERRY, Sheriff, et al.

In re G. S. BAXTER & CO.

(District Court, S. D. Florida. April 20, 1918.)

BANKRUPTCY ⚖≈301—PRELIMINARY INJUNCTION—GROUNDS.

An application by a trustee in bankruptcy for a preliminary injunction, to restrain defendants from transferring property alleged to have been acquired by them through a transaction which gave a preference, denied, where the only allegation that they were connected with the transaction or that they intended selling the property was made on information and belief, and there was no allegation or showing of their insolvency.

In Equity. Suit by H. Lyle, trustee in bankruptcy of G. S. Baxter & Co., bankrupt, against C. J. Perry, Sheriff of St. Johns County, Fla., and others. On motion for preliminary injunction. Denied.

Telfair Knight, of Jacksonville, Fla., for complainant.

Charles M. Cooper, of Jacksonville, Fla., for defendant First Nat. Bank of St. Augustine.

F. P. Fleming, of Jacksonville, Fla., for defendant Florida Nat. Bank of Jacksonville.

CALL, District Judge. H. Lyle, as trustee for G. S. Baxter & Co., bankrupt, brings his bill against the sheriff of St. Johns county, the purchaser at execution sale, and several banks and others. After alleging the adjudication in bankruptcy, his appointment and qualification as trustee, and authority to bring the suit, the bill proceeds to allege that as trustee he has an interest in the personal property involved; that the suit is brought to set aside certain preferences, and for the purpose of setting aside the sheriff's sale and deed to one of the defendants, as a preference, and to redeem said personal property from the sheriff's sale; that within four months prior to the filing of the petition in bankruptcy the bankrupt was the owner of certain personal property, describing it; that the bankrupt acquired title to the property from the S. & A. Lumber Company, a corporation; that on the rule day in January, 1918, the greater part of the property sold by the sheriff of St. Johns county under execution issued against the S. & A. Lumber Company, out of the state court, in 1916, to one of the defendants, for the sum of $2,500, which sum was grossly disproportioned to the true market value of the property; that on in-

formation and belief two of the defendant banks were parties to the sale for an inadequate price, and were the real purchasers, although the bill of sale was taken in the name of a third person; that the purchase price of the property was not paid to the sheriff by the purchaser, but was deposited in one of the defendant banks to the credit of the sheriff, and he was notified by the president of the said bank; that two of said defendant banks are claiming to own the aforesaid property, and are attempting to dispose of same to protect themselves from loss on indebtedness due them by the bankrupt; and that if they succeed it will result in a preference in their favor.

The bill further alleges that at the time said sheriff's sale was made bankruptcy proceedings were and had been pending for one month; that the president of one of the defendant banks now claiming the property was present in December at a creditors' meeting, and took part therein with other creditors in securing an extension of the return day in said bankruptcy proceedings to January 22, 1918; that, but for the extension, the adjudication in bankruptcy would have been had in December; that at the time of this meeting of creditors said sheriff's sale was being advertised, and said president knew of the fact; that it was at said meeting represented that all the property owned by the bankrupt was a sawmill, and this fact was not contradicted by the said president; that the attorney for the petitioning creditors had no knowledge of said sale until March, 1918; that the advertisement of said sale was published in the Hastings Herald, a paper of no circulation of any consequence outside of Hastings. It then alleges the claim of two of the defendant banks to have mortgages upon this property, and alleges that one does not cover property in controversy and the other has been paid. It then offers to redeem and tenders the amount paid at said sheriff's sale. It then prays for a temporary restraining order against the purchaser at the sheriff's sale and the two banks removing or transferring the title to said property or any portion thereof, and for other relief.

The hearing is upon the motion for a temporary restraining order. This application must be decided upon the bill of complaint, the exhibits thereto, and the affidavits filed at the hearing. The only allegations in the bill connecting the two banks with any claim to the property sold, or any intent to sell or dispose of same, is made upon information and belief, and no affidavit filed with the bill from any one having personal knowledge of those facts. Nor does the bill contain any allegation which would tend to show irremediable damage, in that the defendants were unable to respond in any amount equal to the value of the property, or that the property had some peculiar value which could not be compensated for in damages. The bill fails to show any necessity for the drastic remedy by injunction, and, failing to do this, a court of chancery will deny the application.

For these several reasons, the application for a temporary restraining order will be denied. It will be so ordered.